**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello**

Civil Action No. 17-cv-01766-CMA

R.L.C.

      Plaintiff,

v.

KILOLO KIJAKAZI, acting Commissioner of Social Security,[1]

      Defendant.

---

**ORDER AFFIRMING DENIAL OF DISABILITY INSURANCE BENEFITS**

---

This matter is before the Court on review of the Social Security Commissioner's

decision denying Plaintiff R.L.C.'s application for disability benefits. Jurisdiction is proper

under 42 U.S.C. § 405(g). For the following reasons, the Court affirms the denial of

benefits.

## I.    BACKGROUND

Plaintiff filed his claim for Disability Insurance Benefits and Supplemental

Security Income Benefits on February 4, 2014. (Doc. # 13-6 at 305, 312.)[2] He alleged a

disability onset date of November 1, 2013, due to chronic knee pain in both knees,

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, and she is automatically substituted as the Defendant in this action. *See* Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).

[2] The exhibits filed at Doc. # 13 constitute the Administrative Record in this matter. The Court cites to the docket number of the exhibit (*e.g.*, Doc. # 13-6) and the page number from the Administrative Record (*e.g.*, at 305).

lower back pain, PTSD, depression, and anxiety, among other conditions. (*Id.*; Doc. #

13-7 at 6.) At the time of his alleged disability onset date, Plaintiff was 40 years old.

Plaintiff's applications for disability benefits and supplemental security income

were denied on May 7, 2014. (Doc. # 13-4 at 151, 155.) Plaintiff then filed a written

request for a hearing, which was held before an ALJ on May 11, 2016. *See* (Doc. # 13-3

at 120.) The ALJ issued an unfavorable decision on May 25, 2016, (*id.* at 129), and the

Appeals Council denied review on June 7, 2017 (*id.* at 136–39). Plaintiff then filed a

complaint before this Court. (*Id.* at 141.) Prior to filing an answer, the Commissioner

moved for remand under Sentence Six of 42 U.S.C. § 405(g) because the record

contained evidence about an individual that was not Plaintiff and the ALJ's decision

relied, in part, on that evidence. (*Id.* at 144.) The Court granted the motion and

remanded the case to the Commissioner with instructions for the ALJ to conduct a *de

novo* hearing. (*Id.*)

A different ALJ held a new hearing on August 20, 2019. (Doc. # 13-2 at 36.)

Plaintiff and an impartial vocational expert, Douglas Prutting, testified at the hearing.

(*Id.*) On October 8, 2019, the ALJ issued a written decision in accordance with the

Commissioner's five-step sequential evaluation process and denied Plaintiff's request

for benefits.[3] (*Id.* at 9–27.) At step one, the ALJ determined that Plaintiff had not

---

[3] The five-step process requires the ALJ to determine whether a claimant: (1) has engaged in substantial gainful activity during the alleged period of disability; (2) has a medically severe impairment or combination of impairments; (3) has a condition which meets or equals the severity of a listed impairment; (4) is able to return to his or her past relevant work; and, if not, (5) is able to perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden of establishing a prima facie case of disability at steps one through four; the

engaged in substantial gainful activity since November 1, 2013, the alleged onset date. (*Id.* at 12.) At step two, the ALJ found that Plaintiff has several severe impairments, including "right knee osteoarthritis, obesity, depression, anxiety/PTSD, alcohol abuse, and marijuana abuse." (*Id.*)

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of impairments listed in the disability regulations. (*Id.* at 13.) The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work with the following abilities and limitations:

> [T]he claimant would require work which is unskilled with an SVP of 1 or 2, requiring routine tasks and simple decision making; not in close proximity to coworkers or supervisors (meaning that the claimant could not function as a member of a team), with minimal to no direct contact with the public. The claimant could only lift or carry up to 10 pounds frequently and 20 pounds occasionally. The claimant could stand or walk, with normal breaks, for a total of 6 hours in an 8-hour workday. The claimant could perform pushing and pulling motions with upper and lower extremities within the weight restrictions given. The claimant could perform each of the following postural activities occasionally: climbing of ramps or stairs, crouching, or crawling. The claimant could climb ladders, ropers, or scaffolds on the job, but only occasionally. The claimant could perform stooping and kneeling activities, but only frequently. Furthermore, the claimant would be limited to no production-oriented work.

(*Id.* at 15–16.)

At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work. (*Id.* at 25.) However, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in

---

Commissioner has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

significant numbers in the national economy that Plaintiff can perform, including photocopy machine operator, mail clerk, library shelver, and food service worker. (*Id.* at 25–26.) Accordingly, the ALJ concluded that Plaintiff was not disabled under the Social Security Act and denied his request for disability benefits and supplemental security income. (*Id.* at 26–27.) The Appeals Council denied Plaintiff's request for review, which made the ALJ's decision the final decision of the Commissioner. (*Id.* at 1–2); *see Blea v. Barnhart*, 466 F.3d 903, 908 (10th Cir. 2006).

Plaintiff filed a motion to reopen his case before this Court on December 3, 2020. (Doc. # 12.) He filed his Opening Brief (Doc. # 18) on January 19, 2021. The Commissioner filed a Response Brief (Doc. # 19), and Plaintiff followed with his Reply (Doc. # 20). The matter is now ripe for review.

## II.   LEGAL STANDARDS

When reviewing the Commissioner's decision, the Court is limited to determining "whether the findings are supported by substantial evidence and whether the Secretary applied correct legal standards." *Pacheco v. Sullivan*, 931 F.2d 695, 696 (10th Cir. 1991); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 217 (1938). Substantial evidence "is more than a scintilla, but less than a preponderance." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). Thus, a decision is not based on substantial evidence "if it is

overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052

(10th Cir. 2009) (internal quotation marks omitted). In reviewing the record to make the

substantial evidence determination, the Court "may not reweigh the evidence nor

substitute [its] judgment for the Secretary's." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th

Cir. 1994). In addition, the Court "may not displace the agency's choice between two

fairly conflicting views, even though the [C]ourt would justifiably have made a different

choice had the matter been before it *de novo*." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th

Cir. 2007) (internal quotation marks and citation omitted).

In addition to the absence of substantial supporting evidence, "[f]ailure to apply

the correct legal standard or to provide [the reviewing court] with a sufficient basis to

determine that appropriate legal principles have been followed is grounds for reversal."

*Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quoting *Smith v. Heckler*, 707

F.2d 1284, 1285 (11th Cir. 1983)). "There are specific rules of law that must be followed

in deciding whether evidence is substantial in these disability cases." *Frey v. Bowen*,

816 F.2d 508, 512 (10th Cir. 1987). However, not every error in evaluating evidence or

applying the correct legal standard warrants reversal or remand. "Courts may not

reverse and remand for failure to comply with a regulation without first considering

whether the error was harmless." *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D.

Tex. 2006); *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)

(recognizing that the Tenth Circuit has "specifically applied [the principle of harmless

error] in social security disability cases" and citing cases). The standard for harmless

error requires a finding that, considering the evidence before the ALJ, the Court can

"confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen*, 357 F.3d at 1145. Harmless error exists where it is "inconceivable" that a different administrative conclusion would have been reached absent the error. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

## III.   DISCUSSION

Plaintiff argues that the ALJ erred in considering three different medical opinions. He contends (1) the ALJ did not have valid reasons for rejecting some of Dr. Rodriguez's opined mental limitations; (2) the ALJ did not have valid reasons for disregarding Dr. Pelc's testimony from the 2016 hearing; and (3) the ALJ improperly relied on Dr. Terry's opinion of the capacity for light work. (Doc. # 18 at 3.) The Court will address each argument in turn.

## A.   OPINION OF DR. RODRIGUEZ

In determining Plaintiff's RFC, the ALJ considered the April 2016 evaluation of Carlos Rodriguez, PhD, Licensed Psychologist. (Doc. # 13-2 at 23.) Dr. Rodriguez conducted a psycho-diagnostic interview of Plaintiff, performed a mini mental status exam, and filled out a residual functional capacity evaluation (mental) form. (Doc. # 13-20 at 1478–1485.) Plaintiff scored 22 out of 30 on the mental status exam, suggesting the presence of neurocognitive impairment, and Dr. Rodriguez noted that he was able to recall 3 out of 3 objects immediately and 2 out of 3 objects after a five-minute delay. (*Id.* at 1479–80.) Dr. Rodriguez recommended diagnoses of posttraumatic stress disorder, major depressive disorder, psychotic thought disorder, and alcohol abuse. (*Id.*

at 1482.) On the RFC form, Dr. Rodriguez opined that Plaintiff was moderately or

markedly limited in most areas of mental functioning, including the ability to complete

normal work weeks without interruption and to perform at a consistent pace without

unreasonable rest periods. (*Id.* at 1483–84.) Dr. Rodriguez also noted that Plaintiff

would likely be off task more than 30% of the workweek and absent 3 or more days per

month. (*Id.* at 1484.)

The ALJ considered opinion evidence in accordance with the requirements of 20

C.F.R. § 404.1527 and assigned "moderate weight" to Dr. Rodriguez's opinion.[4] (Doc. #

13-2 at 16, 24.) After providing a detailed review of Dr. Rodriguez's evaluation and

opinion on the RFC form, the ALJ explained that Plaintiff's performance on the mental

status exam "supports only moderate limitations, and is consistent with the assessed

RFC limiting the claimant to unskilled work." (*Id.*) However, the ALJ observed that Dr.

Rodriguez's opinion that Plaintiff would be off task more than 30% of the workweek and

absent 3 or more days per month went "far beyond the findings of the limited mini-

mental status exam." (*Id.*) The ALJ found it "clear that Dr. Rodriguez's findings are

largely based on the claimant's subjective reports." (*Id.*) Moreover, the ALJ noted that

Dr. Rodriguez's assessment "was made during a period of questionable compliance

---

[4] Because this case was filed before March 27, 2017, the ALJ was required to weigh opinion evidence using the six factors listed in 20 C.F.R. § 404.1527. Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

with treatment" because the records indicate that Plaintiff had not been taking

psychoactive medications for a several-month period prior to the evaluation. (*Id.*) While

the ALJ found that the memory and concentration test results in Dr. Rodriguez's

evaluation were consistent with claimant's other records, the ALJ found that the

limitations described by Dr. Rodriguez "do not accurately represent the claimant's

residual functional capacity." (*Id.*)

Plaintiff first argues that the ALJ erred by finding that the results of the mental

status exam do not support Dr. Rodriguez's specific mental limitations. (Doc. # 18 at

19.) Specifically, Plaintiff contends that the ALJ impermissibly substituted her opinion for

that of the physician in finding that the mental status exam findings were not sufficiently

severe to support the "moderate" or "marked" limitations that Dr. Rodriguez indicated in

the RFC form. (*Id.*) Plaintiff is correct that the ALJ may not substitute her own medical

opinion for that of a physician. *See Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir.

1996) (holding that "the ALJ clearly overstepped his bounds when he substituted his

medical judgment for that of [the doctor]" in determining that test results did not support

a diagnosis). However, the Court disagrees with Plaintiff that the ALJ improperly

interpreted the test results or imposed her medical opinion to decide that the test results

did not support Dr. Rodriguez's stated limitations. Rather, the ALJ noted that Plaintiff's

"memory and concentration test results are generally consistent with the claimant's

other records" and therefore incorporated those findings into the RFC. (Doc. # 13-2 at

23.) The ALJ then gave only moderate weight to the limitations because they went

"beyond the findings of the limited mini-mental status exam" and were "based on the claimant's subjective reports." (*Id.*)

Plaintiff next contends that the ALJ erred by finding that Dr. Rodriguez's mental limitations were "largely based on the claimant's subjective reports." (Doc. # 18 at 21.) Plaintiff argues that there is no evidence that Dr. Rodriguez relied largely or at all on Plaintiff's subjective statements in opining on Plaintiff's limitations. (*Id.*) The Court disagrees. The record and Dr. Rodriguez's report indicate that Dr. Rodriguez evaluated Plaintiff on one occasion through the format of a "psycho-diagnostic interview" conducted on April 8, 2016. (Doc. # 13-20 at 1478.) The report states that Dr. Rodriguez also reviewed certain medical information provided by Plaintiff's attorney and conducted a mental status exam, but the bulk of the five-page report consists of the psycho-diagnostic interview. (*Id.* at 1478–82.) Dr. Rodriguez completed the RFC form with the challenged limitations on the same date that he conducted the interview of Plaintiff. (*Id.* at 1485.) The ALJ noted that "[i]n terms of testing, only a mini mental status exam was performed." (Doc. # 13-2 at 23.)  Under these circumstances, the Court concludes that the ALJ did not err by discounting Dr. Rodriguez's stated limitations on the grounds that they were largely based on Plaintiff's subjective reports. *See Rivera v. Colvin*, 629 F. App'x 842, 845 (10th Cir. 2015) (affirming the ALJ's decision to give less weight to an opinion where the doctor "examined [plaintiff] only once and relied on her subjective complaints, which the ALJ found were incredible"); *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (concluding the ALJ properly gave no weight to a physician's opinion because he met with the claimant only once, he relied on her subjective reports,

9

and his opinion was not supported by the evidence). Moreover, even if the ALJ did improperly speculate as to the basis for Dr. Rodriguez's opinions, the Court finds that the ALJ provided other sufficient reasons for discounting Dr. Rodriguez's more restrictive limitations, including that the limitations did not accurately represent Plaintiff's RFC in light of the other medical evidence in the record.

Finally, Plaintiff argues that the ALJ improperly discounted Dr. Rodriguez's limitations for being made at a time when Plaintiff had questionable compliance with treatment. (Doc. # 18 at 22.) Plaintiff asserts that the ALJ erred by not making a finding that more treatment would have increased Plaintiff's mental functioning before discounting the opinion on this basis. (*Id.* at 23.) As an initial matter, the Court notes that the ALJ was not required to find that treatment would have improved Plaintiff's mental functioning. *See Johnson v. Colvin*, 640 F. App'x 770, 774 (10th Cir. 2016) ("[W]hen, as here, noncompliance with prescribed treatment is invoked not as an independent basis for denying disability but only as a factor diminishing the credibility of a claimant's allegations of the severity of symptoms prompting the treatment, the ALJ need not also find the foregone treatment would have restored the claimant's ability to work."). Further, because the ALJ noted that Dr. Rodriguez's limitations were based largely on Plaintiff's subjective reports, it was appropriate for the ALJ to take into consideration the factor of Plaintiff's non-compliance with treatment during the relevant time period.

In sum, the Court finds that substantial evidence supports the ALJ's decision to accord Dr. Rodriguez's moderate weight. Although the ALJ did not discuss all six of the

factors listed in 20 C.F.R. § 404.1527(c), her analysis was sufficiently specific to identify

the reasons why she gave less weight to Dr. Rodriguez's opinions. *See Rivera*, 629 F.

App'x at 843 ("Here, the ALJ did not discuss all the factors, but he cited them, and his

decision was specific enough for us to determine what weight he gave the opinions and

why."). The Court therefore affirms the ALJ's conclusion with respect to Dr. Rodriguez.

**B.      DR. PELC'S TESTIMONY FROM 2016 HEARING**

Plaintiff next argues that the ALJ did not have valid reasons for disregarding Dr.

Robert Pelc's testimony from the first hearing in 2016. (Doc. # 18 at 24.)

To reiterate, this case was previously remanded because the record contained

medical records of an individual who was not Plaintiff and the first decision relied, in

part, on those medical records. Accordingly, in reviewing this case *de novo*, the ALJ

assigned no weight to prior opinion evidence, including the testimony of Dr. Pelc, that

was based in part on a review of the medical evidence containing records from this

other individual. (Doc. # 13-2 at 21.) The ALJ explained:

> As for the opinion evidence, as the prior record contained evidence
> belonging to another individual, the opinions and prior administrative
> findings of consultants and medical experts who reviewed that evidence in
> making their assessments has been given no weight. This includes the
> opinions and prior administrative findings of the State agency and
> psychological consultants at the time of the initial evaluation, as well as
> the testimony of the medical experts at the claimant's May 2016 hearing,
> Robert Pelc, PhD, and Robert Goldstein, MD.

(*Id.* at 21–22.)

Plaintiff asserts that the ALJ's decision to accord no weight to Dr. Pelc's

testimony was error because "there is no evidence that Dr. Pelc's opinion was

influenced by the existence in the record of evidence belonging to another person" and

"the ALJ did not explain why she believed that Dr. Pelc's opinions were totally undermined by the other person's records." (Doc. # 18 at 25.) The Court disagrees with Plaintiff and finds that the ALJ's reason for rejecting Dr. Pelc's opinion—along with all other prior opinions formed after reviewing the tainted medical record—is sufficiently specific and valid. At the 2016 hearing, Dr. Pelc testified that he had received and reviewed exhibits 1 through 22F in the record. (Doc. # (13-8 at 479.) Accordingly, Dr. Pelc received and reviewed the medical records belonging to the other individual that were located at exhibits 8F and 14F. It was therefore proper for the ALJ to accord no weight to Dr. Pelc's opinion because his opinion was based on a review of medical records that contained medical information for an individual that was not Plaintiff.

Plaintiff urges that that the medical records of the other individual could not have influenced Dr. Pelc's opinion because he was an expert psychologist who assessed Plaintiff's **mental** functioning, whereas the erroneously included records of the other individual appeared to deal with the individual's **physical** conditions. (Doc. # 18 at 25–26.) The Court declines to parse Dr. Pelc's opinion and the medical records of the other individual in order to speculate to what extent the records may have affected Dr. Pelc's opinion. The Court finds it sufficient, for this analysis, that the ALJ stated a specific, valid reason for assigning no weight to any prior opinion that was based on a review of the record that contained medical records of another individual. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (observing that "[u]nder the regulations, the agency rulings, and our case law, an ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion" and such reasons "must be sufficiently

specific." (internal quotations and citation omitted)). The Court therefore affirms the

ALJ's conclusion to afford no weight to Dr. Pelc's testimony at the 2016 hearing.

## C.    OPINION OF DR. TERRY

Finally, Plaintiff argues that the ALJ improperly relied on Dr. Terry's opinion of

Plaintiff's capacity for light work. (Doc. # 18 at 28.) In so arguing, Plaintiff takes the

opposite approach and contends that "[i]t was wrong for the ALJ to accept Dr. Terry's

opinion because she relied on evidence tainted by the other person's records." (*Id.*)

In formulating Plaintiff's RFC, the ALJ considered the August 2019 medical

evaluation of State agency medical consultant, Kimberly Terry, MD. (Doc. # 13-2 at 22.)

The ALJ noted that Dr. Terry, who reviewed the record after remand and the removal of

records pertaining to the other individual, "opined the claimant retained the previously

assessed light residual functional capacity." (*Id.*) Further, the ALJ found that Dr. Terry's

opinion was consistent with the evidence of record and noted that Dr. Terry "has

reviewed the entire file and has special expertise in the Social Security program rules

and in evaluating functionable ability." (*Id.*) Accordingly, the ALJ concluded that Dr.

Terry's opinion was well supported and gave it great weight. (*Id.*)

Plaintiff objects that Dr. Terry's opinion was tainted by prior evidence because

Dr. Terry stated that she agreed with "the previous light assessments" that were formed

based on a review of the prior record. (Doc. # 18 at 28–29.) The Commissioner disputes

that Dr. Terry's opinion indicates that she relied on evidence tainted by the other

person's records. Rather, the Commissioner argues that Dr. Terry "merely agreed with

those previous opinions' conclusions, and did so only after reviewing the updated

administrative record, from which the other person's medical records had been excised, and to which updated evidence of Plaintiff's treatment after the prior, vacated ALJ decision had been added." (Doc. # 19 at 12.) The Court agrees with the Commissioner that there is no indication that Dr. Terry's opinion was tainted by reviewing the records of the other individual. Rather, Dr. Terry's opinion indicates that she reviewed the medical records in August 2019—which did not include the records from the other individual, but did include updated medical information from Plaintiff—and she assessed that Plaintiff was restricted to "light" work. She thus agreed with the conclusions of the previous light assessments. Under these circumstances, the Court finds that the ALJ did not err by assigning Dr. Terry's opinion great weight. Moreover, the ALJ provided good, specific reasons for the weight she assigned to Dr. Terry's opinion, and substantial evidence supports her decision.

In sum, the Court finds that the ALJ gave specific, valid reasons for the varying weight she assigned to Dr. Rodriguez's, Dr. Pelc's, and Dr. Terry's three opinions. These reasons are supported by substantial evidence in the record. Therefore, the Court will not reverse the ALJ's decision.

## IV.    CONCLUSION

For the foregoing reasons, it is ORDERED that the ALJ's denial of disability benefits is AFFIRMED.

DATED:  October 3, 2022

BY THE COURT:

CHRISTINE M. ARGUELLO
Senior United States District Judge

14